United States District Court
Southern District of Texas
**ENTERED**
August 30, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAMELA LOVE, | § | CIVIL ACTION NO. |
| Plaintiff, | § | 4:20-cv-00176 |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| UNIVERSITY OF SAINT THOMAS, | § | |
| Defendant. | § | |

OPINION AND ORDER
GRANTING SUMMARY JUDGMENT

The motion by the University of Saint Thomas for summary judgment is granted. Dkt 30.

1. Background

This action involves allegations of race discrimination by administrators of various races against a White individual. It's therefore necessary to identify the race of the individuals involved.

Poldi Tschirch is White. She's the Dean of the Carol and Odis Peavey School of Nursing at the University of Saint Thomas in Houston, Texas. Dkt 30-4 at 3. In that position, she makes all final hiring decisions. Id at 5.

Plaintiff Pamela Love is White. Tschirch hired her as an associate professor in July 2013. This was a twelve-month, non-tenure track position spanning the 2013/14 academic year. Tschirch subsequently rehired Love for the 2014/15 and 2015/16 academic years on the same conditions. Dkt 30-8 at 1–4.

Angelina Chambers is Black. She's the Associate Dean for the School of Nursing Operations and Undergraduate Studies. In that capacity, she first addressed Love's

performance during her March 2015 faculty evaluation meeting. Chambers there specifically noted that Love needed "to improve on conflict engagement resolution." Dkt 30-14; see also Dkt 30-3 at 21–24 (Love deposition). Love indicated at the time that she agreed with this characterization of her performance. Dkt 30-14.

Love's performance during Summer 2015 then had a number of deficiencies. This included failing to make clinical arrangements for a course, refusing to use the agreed-upon process for creating courses on an online classroom management program, and failing to communicate with Chambers regarding an urgent study-abroad matter. Dkts 30-12 at 4–9 & 30-3 at 15–16, 26. Tschirch in response put Love on a performance improvement plan that July. Referred to as a *PIP*, it removed her as a senior faculty facilitator and changed her teaching assignment for Spring 2016. Dkt 30-12 at 3. It also outlined areas in which Love needed to improve, while describing the events that led Tschirch to these conclusions. See Dkt 30-15.

Tschirch held a follow-up meeting in September 2015. She there noted that Love "demonstrated improvement in three areas" but still needed to improve her resistance "to supporting established processes." As an example, Tschirch noted that Love provided incorrect and incomplete information on an end-of-course summary for the Summer 2015 semester. Dkt 30-16.

Randy Graham is White. He's Associate Vice President of Human Resources. Love sent an email to him, Tschirch, and Chambers in which she alleged discrimination against her and other White colleagues. She there suggested that the allegations in the PIP were false and "racially motivated." She alleged that "African-American colleagues are being given preferential treatment." And she asserted, "Chambers continues to treat me in a discriminatory manner." Dkt 35-1 at 2.

Graham initiated an internal investigation in response to this email. He met with Love several times. He also met with Tschirch, Chambers, and other faculty members.

2

Dkts 30-3 at 47–50 (Love deposition), 30-19 at 3–5 (Graham deposition) & 30-20 (investigation summary). He concluded that the decisions made by the administration weren't racially motivated. See Dkt 30-20; see also Dkt 30-19 at 8. To the contrary, he found that the administration "had stated good business reasons for their decisions." Dkt 30-19 at 7.

Graham then met with Love on May 12, 2016. He there discussed his findings and notified Love that Tschirch had decided not to renew Love's contract for the 2016/17 academic year. Dkt 30-3 at 51. As explained elsewhere below, the parties dispute when Tschirch actually made this decision. But viewing the evidence in the light most favorable to Love as the nonmoving party, Tschirch made the decision on April 29, 2016. Compare Dkt 35 at 7, 13–16, 22–23, 24–25 (summarizing evidence), with Dkt 30 at 14 (summarizing contrary evidence).

Love filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission on December 15, 2016. Dkts 30-21 & 35-1 at 104. The EEOC issued a determination letter of less than two pages in which it found "reasonable cause to believe" that Saint Thomas retaliated against Love. Dkt 35-1 at 4. Love then filed the instant action on February 2, 2018, after receiving a "right-to-sue notice" from the EEOC. Dkts 1 & 35-1 at 106. She brings claims for racial discrimination and retaliation under both 42 USC § 1981 and Title VII, 42 USC § 2000e *et seq*. Dkt 19 at ¶¶ 54–58. These claims "are based on the non-renewal of her contract as ultimately decided by Tschirch and which was orally communicated to Love on May 12, 2016." Dkt 35 at 17.

Saint Thomas moved for summary judgment on all claims after the conclusion of discovery. Dkt 30.

    2.   Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment

3

as a matter of law." A fact is *material* if it "might affect the outcome of the suit under the governing law." *Sulzer Carbomedics Inc v Oregon Cardio-Devices Inc*, 257 F3d 449, 456 (5th Cir 2001), quoting *Anderson v Liberty Lobby Inc*, 477 US 242, 248 (1986). And a dispute is *genuine* if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v CCC & R Tres Arboles LLC*, 736 F3d 396, 400 (5th Cir 2013), quoting *Anderson*, 477 US at 248.

The summary judgment stage doesn't involve weighing the evidence or determining the truth of the matter. The task is solely to determine whether a genuine issue exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith v Harris County*, 956 F3d 311, 316 (5th Cir 2020). Disputed factual issues must be resolved in favor of the nonmoving party. *Little v Liquid Air Corp*, 37 F3d 1069, 1075 (5th Cir 1994). All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Connors v Graves*, 538 F3d 373, 376 (5th Cir 2008).

The moving party typically bears the entire burden to demonstrate the absence of a genuine issue of material fact. *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015); see also *Celotex Corp v Catrett*, 477 US 317, 322–23 (1986). But when a motion for summary judgment by a defendant presents a question on which the plaintiff bears the burden of proof at trial, the burden shifts to the plaintiff to proffer summary judgment proof establishing an issue of material fact warranting trial. *Nola Spice*, 783 F3d at 536. To meet this burden of proof, the evidence must be both "competent and admissible at trial." *Bellard v Gautreaux*, 675 F3d 454, 460 (5th Cir 2012).

3. Section 1981 claims

The parties dispute the applicable limitations period pertinent to Love's claims under Section 1981. Saint Thomas argues that Love's claims are barred by the two-year limitations period of Texas Civil Practice and Remedies Code § 16.003(a). Dkt 30 at 18–19. Love contends

4

that the four-year limitations period of 28 USC § 1658 applies. Dkt 35 at 18–19. Saint Thomas is correct. Understanding why that's so requires some background.

Section 1981 was originally enacted in 1866. The operative provision of subsection (a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

But it doesn't contain a statute of limitations. The Supreme Court consequently held in 1987 that federal courts should apply "the most appropriate or analogous state statute of limitations" to claims based on asserted violations of Section 1981. *Goodman v Lukens Steel Co*, 482 US 656, 660 (1987). Federal courts in Texas therefore applied the two-year Texas limitations period for personal injury torts. *Price v Digital Equipment Corp*, 846 F2d 1026, 1028 (5th Cir 1988); see Tex Civil Practice & Remedies Code § 16.003(a).

The Supreme Court then held in 1989 that the statutory right *to make and enforce contracts* established by Section 1981 didn't extend to "conduct by the employer after the contract relation has been established." *Patterson v McLean Credit Union*, 491 US 164, 177 (1989). Congress in response amended Section 1981, expanding the definition of *make and enforce contracts* in 1991 as follows:

> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoy-

5

> ment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 USC § 1981(b).

This amendment raised the issue of whether analogous state statutes of limitations still applied to Section 1981 claims, or whether such claims were now subject to a new catchall four-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990. That provision—28 USC § 165—was itself enacted in 1990 and states:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

The Supreme Court answered that question in 2004, holding that the four-year limitations period of Section 1658 only applies to claims arising under the 1991 revisions to Section 1981. But claims that could have been brought under Section 1981 before the 1991 amendment remain subject to the pertinent state limitations period. *Jones v R.R. Donnelley & Sons Co*, 541 US 369, 382 (2004). The determinative question regarding the applicable limitations period, then, is "whether the plaintiff has alleged a violation of the relevant statute as it stood prior to December 1, 1990, or whether her claims necessarily depend on a subsequent amendment." Id at 384.

The Fifth Circuit holds that a claim "for failure to enter into a new contract" falls within the pre-amended language of Section 1981. *Johnson v Crown Enterprises Inc*, 398 F3d 339, 341–42 (5th Cir 2005). And here, it's undisputed that Love entered into one-year, non-tenure track contracts with Saint Thomas for the 2013/14, 2014/15, and 2015/16 academic years. Dkt 30-8. The Saint Thomas policy on faculty contracts is emphatic in this regard:

> a. A term contract is a non-tenure-track appointment, usually for one academic

> year, and automatically terminates upon the expiration of the specified period.
>
> b. Reemployment of a faculty member after termination of a term contract is solely at the discretion of the University. Such reappointment may continue indefinitely.

Dkt 30-10 at 2.

These provisions make clear that each term contract is separate and distinct from that of the previous academic year. And so, Saint Thomas declined "to enter into a new contract" when Graham informed Love that her contract wasn't renewed for the 2016/17 academic year. This in turn means that the Texas two-year limitations period for personal-injury actions pertains. See *Johnson*, 398 F3d at 341–42; Tex Civil Practice & Remedies Code § 16.003.

Love brought this action on January 16, 2020. Dkt 1. But her Section 1981 claims are based on acts that occurred in 2016. Such claims are barred.

Love attempts to avoid this result by arguing that she wasn't "seeking to enter into a new and distinct employment relationship with" Saint Thomas. Dkt 35 at 19. *Johnson* precludes such argument. A truck driver there was twice hired on a seasonal basis, with the company then refusing to rehire him for a third season. The Fifth Circuit found that this constituted "failure to enter into a new contract" and applied the state statute of limitations. 398 F3d at 341–42. Nearly identical facts being present here, the same result obtains.

Summary judgment will be granted on the Section 1981 claims.

### 4. Title VII claims

Love also brings claims for discrimination and retaliation pursuant to Title VII. Dkt 19 at ¶¶ 55–56, 58. Section 2000e-2(a)(1) makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race,

7

color, religion, sex, or national origin." Section 2000e-3(a) makes it further unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

Love doesn't contend that she has direct evidence of discrimination or retaliation. Her claims must therefore be analyzed under the modified burden-shifting framework set out in *McDonnell Douglas Corp v Green*, 411 US 792, 802 (1973). Under that framework, a plaintiff must first set forth a *prima facie* case of discrimination or retaliation. If the plaintiff does so, discrimination is presumed, with the burden shifting to the employer to articulate a legitimate, non-discriminatory or non-retaliatory reason for the underlying employment action. If the employer offers such a reason, the discriminatory inference disappears, and the plaintiff must present evidence that the employer's asserted reason is mere pretext for racial discrimination or retaliation. See *Davis v Dallas Area Rapid Transit*, 383 F3d 309, 316–17 (5th Cir 2004) (applied to Title VII discrimination claims); *Saketkoo v Administrators of Tulane Educational Fund*, 31 F4th 990, 1000 (5th Cir 2022) (applied to Title VII retaliation claims).

> a. Discrimination

Saint Thomas moves for summary judgment on assertion that Love can't establish a *prima facie* case on her discrimination claim. And even if she can, it further argues that there's no genuine dispute of material fact as to pretext. Dkt 30 at 19–24.

> i. *Prima facie* case

A *prima facie* case of discrimination requires the employee to demonstrate that (i) she is a member of a protected class, (ii) she was qualified for the position, (iii) she suffered an adverse employment action, and (iv) she was replaced by someone outside her protected

8

class. *Vaughn*, 665 F3d at 636. The parties only dispute the fourth element.

Love contends that she was replaced by two Black faculty members—Lucindra Campbell-Law and Yvette Rolle. Dkt 35 at 17, 20. Campbell-Law was denominated a professor at Saint Thomas during Love's employment, meaning that she was at a rank above Love. Dkts 30-3 at 54 & 30-4 at 38. Rolle was hired as an adjunct faculty member (an unranked position) for the Fall 2016 semester. Dkts 41-1 & 30-4 at 18. She then served as a part-time faculty member from October 2016 until June 2018, at which time she was hired as a full-time assistant professor—the same rank as Love. Dkts 41-1 & 30-4 at 18.

During the 2015/16 academic year, Love served as course coordinator for three courses—NURS 4655, NURS 3391, and NURS 3252 Clinical Inquiry Part I. During the 2016/17 academic year, Campbell-Law and a White faculty member served as co-coordinators for NURS 3391. Campbell-Law coordinated NURS 4655. And Yvette Rolle taught NURS 3252 Clinical Inquiry—a combination of NURS 3252 Clinical Inquiry Part I and NURS 4252 Clinical Inquiry Part II. Dkt 30-2 at 4.

This is enough to raise a genuine dispute of material fact as to whether Love was replaced by individuals outside her protected class.

      ii. Pretext

To establish pretext, an employee must show that "the employer's proffered explanation is unworthy of credence." *Reeves v Sanderson Plumbing Products Inc*, 530 US 133, 143 (2000) (quotation marks and citation omitted). In other words, the explanation "is not the real reason for the adverse employment action." *Burton v Freescale Semiconductor Inc*, 798 F3d 222, 233 (5th Cir 2015) (quotation marks and citation omitted). The employee "must rebut each discrete reason proffered by the employer." Ibid.

Saint Thomas argues that it refused to renew Love's contract because she "was not a good organizational fit due

9

to recurring issues with communication, conflict, and poor planning." Dkt 30 at 22–23, citing Dkts 30-12 & 30-14; see also Dkt 35-1 at 165. It offers in support a litany of examples of Love's poor performance over the course of her entire employment. For example, see Dkts 30-12 & 30-14.

Love first attempts to rebut this proffered reason with a disparate-treatment theory, arguing that Campbell-Law and Chambers were treated more favorably than herself. An employee who proffers another employee as a comparator must "demonstrate that the employment actions at issue were taken under nearly identical circumstances." *Turner v Kansas City Southern Railway Co*, 675 F3d 887, 895 (5th Cir 2012) (quotation marks and citation omitted). As summarized by the Fifth Circuit:

> The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Lee v Kansas City Southern Railroad Co*, 574 F3d 253, 260 (5th Cir 2009) (cleaned up).

By these standards, neither Campbell-Law nor Chambers are proper comparators. As Saint Thomas notes, "Campbell-Law is a higher rank than Love and thus differs

from Love in experience, scholarly achievements, committee and research assignments, and performance expectations." Dkt 30 at 22; see also Dkts 30-4 at 38–39 (Tschirch deposition), 30-5 (academic ranks) & 30-6 at 4–5 (Chambers deposition). Likewise, Chambers isn't similarly situated because she is a higher rank and was also an associate dean—her title thus "carries different responsibilities such as managing courses, assuming additional administrative responsibilities, and taking on additional committee roles." Dkt 42 at 8; see also Dkts 30-5 (academic ranks) & 30-4 at 18–20 (Tschirch deposition). And Love doesn't assert that Campbell-Law or Chambers had similar performance issues. See generally Dkt 35; see also Dkts 30-6 at 4–5 (Chambers deposition) & 30-4 at 39 (Tschirch deposition).

Love also relies on a theory of evidentiary falsification. As mentioned above in the background, the parties dispute when Tschirch actually made the decision not to rehire Love. Compare Dkt 30 at 14, with Dkt 35 at 11–16. Saint Thomas contends that Tschirch made the decision on January 22, 2016, as part of her yearly academic review. Dkt 30-2 at 3. In support, it cites a memorandum bearing that same date, which summarizes a meeting in which Tschrich, Chambers, and Dominic Aquila (then-Provost and Vice President for Academic Affairs) decided not to renew Love's contract. Id at 7 & Dkt 30-18 at 2. However, Love contends that metadata indicates the memorandum was created on April 26, 2016. See Dkt 35 at 13–14 (summarizing metadata evidence). She also notes that Chambers didn't recall discussing Love's termination with Tschirch in January 2016. Dkt 35-1 at 202. In fact, Chambers allegedly discussed future teaching assignments for Love with another faculty member in February 2016. Id at 79. And a handwritten note from Chambers indicated that Tschirch and Aquila would meet on April 29, 2016, regarding "not renewing" Love's contract. Id at 88–89.

Viewing this evidence in the light most favorable to the nonmoving party, Tschirch made the decision not to renew Love's contract on April 29, 2016. Dkt 35 at 7, 15–16, 23,

11

25. But even assuming the allegation of date falsification to be true, it doesn't raise a genuine dispute of *material* fact. The Fifth Circuit holds that the plaintiff "must produce sufficient evidence of implausibility to permit an inference of *discrimination*, not merely an inference that [the defendant's] proffered reason is false." *Owens v Circassia Pharmaceuticals Inc*, 33 F4th 814, 831 (5th Cir 2022) (emphasis in original). And here, the evidentiary falsification argument relates only to the *date* Tschirch made the non-renewal decision. It doesn't purport to raise a genuine dispute as to the underlying *reason* Tschirch decided against renewal—Love's poor performance.

Love lastly asserts that Saint Thomas "admitted to Love improving at least as of September 24, 2015, and it was unable to articulate any substantive deficiencies or incidents by Love from September 24, 2015 to January 22, 2016." Dkt 35 at 22; see also Dkts 35-1 at 164 (Tschirch deposition) & 30-16 (PIP follow-up). But demonstrating some improvement is insufficient, without more, to show pretext. For example, the plaintiff in *Ihsan v Weatherford US LP* presented evidence of improvement but didn't present evidence that he achieved PIP objectives. Judge Sim Lake entered summary judgment against him because he "failed to present any evidence from which a reasonable fact-finder could conclude that defendant's stated reason for his termination was not true." 2019 WL 2191141, *6 (SD Tex).

Similarly, the PIP follow-up meeting reveals that while Love "demonstrated improvement in three areas," there was "an area that still" needed improvement—"Resistance to supporting established processes." Dkt 30-16. Although Tschirch didn't identify any incidents that occurred between the September 2015 PIP meeting and her decision not to renew Love's contract in April 2016 (or as she contends, January 2016), Tschirch concisely articulated her reasoning for the non-renewal decision during her deposition:

> My reasoning, as I started to look at the next academic year and the renewal pro-

> cess for faculty, was that overall I felt like, as I look back on the patterns that I had observed in her performance that her fit with us was not such that I wished—wished to continue her contract.
>
> . . .
>
> When I feel that I am unable to rely on a senior faculty—faculty associate or full professor rank that it is reasonable for me to expect that they function effectively with minimal supervision from me. And although the number of incidents that the—the occurrence of instances had been limited in the fall, I did not have confidence that she would move to function in the way that I expect for faculty at associate or professor rank.

Dkt 35-1 at 165.

Viewed in its totality, Love hasn't produced the requisite "substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Laxton v Gap Inc*, 333 F3d 572, 578 (5th Cir 2003). In other words, even when viewed in the light most favorable to Love, her evidence isn't "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Ibid.

Summary judgment will be granted on the Title VII discrimination claim.

### b. Retaliation

Saint Thomas likewise asserts that it's entitled to summary judgment on Love's retaliation claim because she can't establish a *prima facie* case. And even if she can, Saint Thomas argues that there's insufficient evidence of pretext. Dkt 30 at 24–27.

An evidentiary point has already been ruled upon in this regard. As noted, Love filed a charge of discrimination and retaliation with the EEOC on December 15, 2016.

Dkts 30-21 & 35-1 at 104. The EEOC then issued a determination letter of less than two pages in which it found "reasonable cause to believe" that Saint Thomas retaliated against Love. Dkt 35-1 at 4. Love contends in her response that this letter itself has evidentiary value here. Dkt 35 at 25.

Saint Thomas moved to strike that letter (along with certain other EEOC correspondence) from the record. See Dkt 43. That motion was granted at hearing. Dkt 52; see also FRCP 56(c)(2). In particular, the letter failed to state the evidence upon which it relied or how that evidence was obtained. And further, the Fifth Circuit instructs district courts to review "the evidence de novo, independent of any determination by the EEOC." *Dickerson v Metropolitan Dade County*, 659 F2d 574, 579 (5th Cir 1981).

As such, the EEOC letter needn't be addressed at all here. See *Alkhawaldeh v Dow Chemical Co*, 851 F3d 422, 425 n 1 (5th Cir 2017) (finding no error in refusal to consider EEOC letter on summary judgment), citing *Price v Federal Express Corp*, 283 F3d 715, 725 (5th Cir 2002) (noting district court is "free to ignore" EEOC letter). While the letter is briefly referred to below for the sake of completeness, it remains stricken and of no weight.

        i.  *Prima facie* case

To present a *prima facie* case of retaliation, an employee must show (i) she engaged in activity protected under Title VII, (ii) she suffered an adverse employment action, and (iii) a causal link exists between her activity and the adverse action. *Saketkoo*, 31 F4th at 1000. The parties here only dispute whether a causal link exists. Dkt 35 at 24.

As an initial matter again, the parties dispute whether Tschirch made her non-renewal decision on January 22nd or April 26th of 2016. Compare Dkt 30 at 25–26, with Dkt 35 at 24–25. This dispute is significant because Love filed her complaint in between those dates, on February 24th. Dkt 35-1. If Tschirch made the decision in January, then a causal connection obviously can't exist—there

14

wasn't at the time any action to retaliate against. But for inquiry on summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. It will thus again be assumed that Tschirch made the non-renewal decision in April and not January.

Temporal "proximity between protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage." *Porter v Houma Terrebonne Housing Authority Building of Commissioners*, 810 F3d 940, 949 (5th Cir 2015). The Fifth Circuit has accepted a two-and-a-half-month gap in some cases while rejecting it in others. Ibid, comparing *Richard v Cingular Wireless LLC*, 233 F Appx 334, 338 (5th Cir 2007), with *Amsel v Texas Water Development Board*, 464 F Appx 395, 401–02 (5th Cir 2012). It has "also accepted gaps of less than two months." Ibid, citing *Richardson v Prairie Opportunity Inc*, 470 F Appx 282, 286–87 (5th Cir 2012).

For purposes here, the gap of approximately two months between Love's complaint and the non-renewal decision will be assumed sufficient to establish a *prima facie* case.

ii. Pretext

Saint Thomas articulates a legitimate, non-retaliatory reason for its refusal to renew Love's contract—namely, Love's performance over the course of her employment. Dkt 30 at 22–23, citing Dkts 30-12 & 30-14; see also Dkt 35-1 at 165. Love must therefore establish pretext.

As recently summarized by the Fifth Circuit in the context of a retaliation claim:

> This inquiry requires a greater showing than mere causal connection. It requires that the plaintiff show that protected conduct was *the* reason for the adverse action. In other words, even if plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would

15

> have been terminated even in the absence of the protected conduct.

*Owens*, 33 F4th at 835 (quotation marks and citation omitted, alteration in original).

Love proffers again the same two pieces of evidence to establish pretext—temporal proximity (supposition as to the interval between the date of her complaint and the non-renewal decision) and evidentiary falsification (supposition that the memo memorializing the putative January non-renewal decision was falsified). Dkt 35 at 24–27. As discussed and determined above, both allegations must be accepted as true for consideration on summary judgment. And each does provide some evidence of pretext in the context of her retaliation claim. See *Porter*, 810 F3d at 949; *Burton*, 798 F3d at 236.

But under *Owens*, Love must go beyond the provision of *some* evidence. She must instead "show a conflict in substantial evidence on the question of whether the employer would not have taken the adverse employment action but for the protected activity." *Feist v Louisiana Department of Justice*, 730 F3d 450, 454 (5th Cir 2013) (quotation marks and citation omitted). Evidence is *substantial* "if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Brown v Wal-Mart Stores East LP*, 969 F3d 571, 577 (5th Cir 2020) (quotation marks and citation omitted). A court "should consider numerous factors, including the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." Id at 578 (quotation marks and citation omitted). And as the Fifth Circuit recently reiterated, "There will be cases where a plaintiff has established a prima facie case, yet no rational factfinder could conclude that the action was discriminatory." *Saketkoo*, 31 F4th at 1002 (cleaned up).

Here, the *quality and weight* of the evidence proffered by Love is substantially reduced considering that Love's

contract expired on June 30th and employees typically received renewal decisions in May. Dkt 30-10 at 4. The non-renewal decision therefore had to occur within a short period of Love's protected activity. And regardless, temporal proximity alone is insufficient to establish pretext. *Brown*, 969 F3d at 579, citing *Strong v University Healthcare System LLC*, 482 F3d 802, 807–08 (5th Cir 2007).

The question is thus whether Love's other evidence—"in combination with" temporal proximity—"is sufficient for a reasonable jury to find but-for causation." Ibid. And the only other evidence that she offers is (i) reiteration that the memo memorializing the putative January non-renewal decision was falsified, and (ii) the stricken EEOC determination letter. Dkt 35 at 21–23; see also Dkt 35-1 at 4–5. Regarding the memo, true, one possible inference is that Saint Thomas falsified the date of the memo to conceal its retaliatory motive. But even so, this still wouldn't show that Tschirch would have renewed Love's contract *but for* her protected activity. Neither does the curt EEOC determination letter move the needle. Its conclusory contentions add nothing of material fact to the evidentiary record. See Dkt 35-1 at 4–5.

Saint Thomas, by contrast, has proffered significant evidence that, even in the absence of the protected activity, Tschirch would have chosen not to renew Love's contract. For example, see Dkts 35-1 at 164 (Tschirch deposition), 30-12 (PIP), 30-14 (2014/15 faculty evaluation) & 30-16 (PIP follow-up). Indeed, Saint Thomas has put forth evidence that Tschirch was considering not renewing Love's contract over a month *before* Love filed her complaint. Dkt 30-17 at 4–6 (Aquila deposition). This fact further weakens Love's case, as an employer "proceeding along lines previously contemplated, though not yet definitely determined, is no evidence whatever of causality." *Clark County School District v Breeden*, 532 US 268, 272 (2001).

Love hasn't provided "substantial evidence" on the question of whether Saint Thomas would have renewed her

contract *but for* her complaint. See *Porter*, 810 F3d at 949. Instead, the overwhelming evidence submitted by Saint Thomas precludes any rational factfinder from finding its action to be retaliatory. See *Brown*, 969 F3d at 577; *Owens*, 33 F4th at 835; *Saketkoo*, 31 F4th at 1003.

Summary judgment will be granted on the Title VII retaliation claim.

5. Conclusion

The motion by Defendant University of Saint Thomas for summary judgment is GRANTED. Dkt 30.

The claims brought by Pamala Love against the University of Saint Thomas are DISMISSED WITH PREJUDICE.

A final judgment will enter separately.

SO ORDERED.

Signed on August 30, 2022, at Houston, Texas.

*[signature]*
Hon. Charles Eskridge
United States District Judge